UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KARRIEM S. HOLNESS,                    :
          Petitioner,                  :
                                       :              PRISONER
     v.                                :      Case No. 3:09cv468(WWE)
                                       :
WARDEN, STATE PRISON                   :
          Respondent.                  :

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner Karriem Holness, an inmate confined at Corrigan-Radgowski

Correctional Institution in Uncasville, Connecticut, brings this action *pro se* for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his conviction for assault

and carrying a pistol without a permit.  For the reasons set forth below, the petition will

be denied.

I.     **Procedural Background**

In July 2003, an Assistant State's Attorney for Connecticut Superior Court for the

Judicial District of Hartford, Geographical Area 14 filed an information charging the

petitioner with one count of criminal attempt to commit murder in violation of

Connecticut General Statutes §§ 53a-49(a) and 53a-54a(a), one count of assault in the

first degree in violation of  53a-59(a)(1), one count of attempt to commit robbery in the

first degree in violation of  Connecticut General Statutes §§ 53a-49(a)(2) and 53a-

134(a)(2) and one count of carrying a pistol without a permit in violation of  Connecticut

General Statutes § 29-35(a).  *See* Mem. Opp'n Pet. Writ Habeas Corpus, App. B.  In

February 2005, the Assistant State's Attorney filed a long form information charging the

petitioner with one count of assault in the first degree in violation of 53a-59(a)(1), one

count of assault in the first degree in violation of Connecticut General Statutes § 53a-59(a)(3), one count of attempt to commit robbery in the first degree in violation of Connecticut General Statutes §§ 53a-49(a)(2) and 53a-134(a)(2), one count of carrying a pistol without a permit in violation of Connecticut General Statutes § 29-35(a) and one count of conspiracy to commit robbery in the first degree in violation of Connecticut General Statutes §§ 53a-48 and 53a-134(a)(2). *See id.*

On March 17, 2005, a jury found the petitioner guilty of the first and second counts of assault in the first degree and the fourth count of carrying a pistol without a permit and found the petitioner not guilty of the two robbery counts. *See id.* On June 9, 2005, the court sentenced the petitioner on the first assault count to twenty years of imprisonment, execution suspended after fourteen years, followed by five years of probation and on the second assault count to twenty years of imprisonment, execution suspended after fourteen years, followed by five years of probation, but then vacated the sentence on that count, subject to reinstatement if the first assault conviction was overturned. The court sentenced the petitioner on the fourth count to one year of imprisonment to be served consecutively to the sentence on the first assault count and the sentence on the second assault count, if it was reinstated. *See State v. Holness*, 289 Conn. 535, 536 n.2, 958 A.2d 754, 755 n.2 (2008); Mem. Opp'n Pet. Writ Habeas Corpus, App. I, Doc. No. 12-47.

On direct appeal, the petitioner claimed that the trial court erred in permitting the prosecutor to cross-examine him by paraphrasing portions of a testimonial statement given by Geraldo Rivera to a Manchester Police Department detective in violation of the Sixth Amendment and (2) the trial court erred in admitting the testimonial statement of

Jerrod Smith because he had no meaningful opportunity to cross-examine Smith about the content of the statement. *See id.* at 536, 785 A.2d at 755. The Connecticut Supreme Court affirmed the judgment of conviction. *See id.* at 550, 785 A.2d at 762.

## II.   Factual Background

The Connecticut Supreme Court determined that the jury reasonably could have found the following facts.

> On Friday evening, June 27, 2003, the victim, Johnny Figueroa, and two of his friends, Peter Davila and Shavoyteay Sparks, attended a carnival at St. Bridget's Church in the town of Manchester. Sparks had driven the victim to the carnival and had parked his car behind the residence of Davila's grandmother, Marianne Risley. That residence, located at 18 Woodland Street in Manchester, was a short walking distance from the carnival grounds. The victim also had attended the carnival earlier in the week and had overheard a group of men discussing the possibility of robbing him of the jewelry that he had been wearing.
>
> While at the carnival on Friday evening, the victim received a call on his cellular telephone from a friend, Megan Sears, who told him that she was in her car behind Risley's home. Thereafter, the victim, Davila and Sparks left the carnival to meet Sears. Upon leaving, the three men noticed that approximately fifteen to twenty men, including the [petitioner], were following them.
>
> As the victim, Davila and Sparks approached Risley's residence, Davila separated from the victim and Sparks, apparently to take a shortcut. At about the same time, one of the men in the group that had been following the victim and his two friends called out to the victim. This person, who subsequently was identified as the [petitioner], stated that he wanted to speak to the victim. The victim ignored the [petitioner's] overture, however, and he and Sparks continued toward the 18 Woodland Street residence. Upon arriving there, the victim and Sparks entered an enclosed porch attached to the residence. The [petitioner] and several other men followed the victim and Sparks there, and demanded the victim's jewelry. At this time, Risley emerged

> from the house and told the [petitioner] and his companions
> to leave or she would call the police. The [petitioner] then
> shot the victim in the chest. The [petitioner] and his
> companions then fled from the scene.

*Id.* at 537-38, 958 A.2d at 756.

## III.    Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a

state court conviction only if the petitioner claims that his custody violates the

Constitution or federal laws.  28 U.S.C. § 2254(a).  A claim that a state conviction was

obtained in violation of state law is not cognizable in the federal court.  *See Estelle v.*

*McGuire*, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a

person in state custody with regard to any claim that was rejected on the merits by the

state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Clearly established federal law is found in holdings, not dicta, of

the Supreme Court at the time of the state court decision.  *See Carey v. Musladin*, 549

U.S. 70, 74 (2006).  The law may be a generalized standard or a bright-line rule

intended to apply the standard in a particular context.  *Kennaugh v. Miller*, 289 F.3d 36,

42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002).

A decision is "contrary to" clearly established federal law where the state court

applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008), *cert. denied*, ___ U.S. ___, 129 S. Ct. 1312 (2009). The state court decision must be more than incorrect; it also must be objectively unreasonable, which is a substantially higher standard. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Id.*

## IV. Discussion

The petitioner challenges his conviction on the same two grounds that he raised on direct appeal. He contends that his rights under the confrontation clause of the Sixth

Amendment were violated when: (1) the trial court permitted the prosecutor to cross-examine him with hearsay statements made by Geraldo Rivera, who was unavailable to testify at trial and (2) the trial court permitted the prosecutor to introduce into evidence a written statement given by Jerrod Smith to the Manchester Police Department detective despite the fact that Smith disavowed knowledge of making the statement during his testimony at trial.  The respondent argues that the first ground is procedurally defaulted and the second ground should be denied because the court decision on this ground was neither contrary to nor an unreasonable application of clearly established federal law.

### A.      Hearsay Statements of Geraldo Rivera

The petitioner claims that the trial judge erred in permitting the prosecutor to cross-examine him by using portions of a testimonial statement given by Geraldo Rivera to a Manchester Police Department detective.  The petitioner claims that this conduct violated his Sixth Amendment right to confrontation as set forth in *Crawford v. Washington*, 541 U.S. 36 (2004), because Rivera did not testify at trial and was not subject to cross-examination.  The respondent argues that this claim should be dismissed as having been procedurally defaulted because the petitioner waived this claim at trial.

Under the procedural default doctrine, a federal court will not review the merits of claim raised in a habeas petition, including a constitutional claim, if the state court declined to address the claim because the prisoner failed to meet a state procedural requirement and the state court decision is based on independent and adequate procedural grounds.   *See Walker v. Martin*, ___ U.S. ___, 131 S. Ct. 1120, 1127-28

6

(2011) (citations omitted).  A state rule or requirement must be firmly established and regularly followed by the state in question to qualify as an adequate procedural ground. *See Beard v. Kindler*,  558 U.S. 53, 130 S. Ct. 612, 618 (2009)(internal quotation marks and citation omitted).  A state court decision will be "independent" when it "fairly appears" to rest primarily on state law.  *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citation omitted).

Exceptions to the doctrine barring procedurally defaulted claims from being heard in federal court exist.  A state prisoner can obtain federal habeas review despite having defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule, if he can demonstrate cause for the default and actual prejudice resulting from the default or he can show that failure to consider the claim will result in a fundamental miscarriage of justice.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

The Connecticut Supreme Court determined that the following additional facts and procedural history were relevant to deciding this claim.

> At trial, the [petitioner] testified on direct examination that he had attended the carnival at St. Bridget's Church on June 27, 2003, with two friends, Rivera and Shane Johnson. The [petitioner] also acknowledged that he had followed a group of people from the carnival to the residence located at 18 Woodland Street but testified that he had remained on the front lawn of that residence and did not enter the enclosed porch. According to the [petitioner], he ran from the area after hearing a noise that he presumed was a gunshot. That night, the [petitioner] returned to his home and, thereafter, stayed at his brother's home in Rocky Hill for approximately one week.
>
> On cross-examination, the assistant state's attorney questioned the [petitioner] as to whether it was true that he

had gone to Rivera's house on the morning of June 28, 2003, and asked Rivera to drive him to Hartford for the purpose of disposing of the weapon that he had used to shoot the victim. The [petitioner] denied doing so. The assistant state's attorney then asked the [petitioner] whether he knew that Rivera had given a statement to the police explaining that the [petitioner] had arrived at Rivera's home on the morning after the shooting and, at that time, asked Rivera for assistance in disposing of the gun used in the shooting. The [petitioner] admitted that he was aware of Rivera's statement. Defense counsel did not object to this portion of the cross-examination.

Following a recess, and outside the presence of the jury, defense counsel informed the trial court that he was concerned about the assistant state's attorney's questioning of the [petitioner] regarding Rivera's statements to the police. Defense counsel explained that Rivera was unavailable because, if called on to testify, Rivera intended to invoke his constitutional privilege against self-incrimination in response to any questions. Although defense counsel acknowledged that he had not raised a contemporaneous objection to any of the questions involving Rivera's statements, defense counsel requested that the court take some corrective action, ranging "from a mistrial on one end of the spectrum to some sort of curative instruction [on the other end]."  After observing that defense counsel had failed to object when the questions were asked, the court pressed defense counsel to be more specific with respect to his request. Defense counsel responded: I guess what I would ask for, [at] this point in time, would be possibly some sort of curative instruction ... [a]bout ... Rivera not being available as a witness in this trial." Following further discussion between the court and counsel about Rivera's unavailability, the assistant state's attorney stated that he "certainly would not object to an instruction that ... Rivera's statement[s] [were] not introduced for substantive purposes," and that "probably, the best thing is, as [defense counsel has] requested, [an] instruction that [Rivera is] unavailable." Defense counsel responded by expressing his agreement with such an instruction, adding that it was not necessary for the court to give the instruction until the court delivered its final charge to the jury at the conclusion of the trial.

The following day, during a discussion about the charging

conference that previously had occurred, the trial court stated: "Okay. [The] [d]efendant's request, it was added to the instruction, something about ... Rivera not being available to either side. And I believe both sides agreed on the language. Is that right?" Both the assistant state's attorney and defense counsel responded in the affirmative.

In its final instructions to the jury following the closing arguments of counsel, the trial court instructed the jury in relevant part: "During the evidentiary portion of this case, you heard about statements attributed to ... Rivera. This court has determined that ... Rivera was unavailable as a witness in [this] case through no fault of either party, the state or the defendant.... Rivera was not available for either direct or cross-examination as a witness, and, therefore, the statements attributed to ... Rivera are not to be used as substantive evidence." Defense counsel took no exception to this portion of the jury charge.

*Holness*, 289 Conn. at 539-42, 958 A.2d at 757-58 (footnote omitted).

The Connecticut Supreme Court noted that under *State v. Golding*, 213 Conn. 233, 567 A.2d 823 (1989), a defendant may raise an unpreserved claim on appeal if four conditions are met.[1]  In a situation where an unpreserved claim has been waived at trial, however, a petitioner cannot satisfy the third prong of the *Golding* conditions if the constitutional claim has been waived because "we simply cannot conclude that injustice has been done to either party . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. . . ."  *State v. Fabricatore*, 281 Conn. 469, 481-82,  915 A.2d 872, 880 (2007) (citations and internal quotation marks

---

[1]  The four conditions are as follows: (1) the record of the trial court is sufficient to review the claimed error; (2) the claim asserts a violation of a fundamental right and is of constitutional magnitude; (3) it is clear that a violation of the constitution exists and the violation resulted in a deprivation of the defendant's right to a fair trial; and (4) if the claim is subject to a harmless error review, the state neglected to show harmlessness of the alleged violation of the defendant's constitutional rights beyond a reasonable doubt.  *See id.* at 239-40, 567 A.2d at 827.

ommitted).

Relying on its decision in *Fabricatore*, the Connecticut Supreme Court concluded that the petitioner's Sixth Amendment claim was unpreserved and could not be reviewed because petitioner had waived consideration of the claim at trial.  The court noted that it was clear that the petitioner had agreed to and was satisfied with the limiting instruction that the trial court had given to the jury regarding the statement that had been attributed to Rivera during the prosecutor's cross-examination of the petitioner.  Thus, the petitioner had unequivocally waived his right to review of any claimed error in his cross-examination regarding the statement by Geraldo Rivera. Accordingly, the court declined to review the claim on appeal.

It is evident that the Connecticut Supreme Court expressly relied on a state procedural rule to decline to review the petitioner's claim.  Furthermore, the procedural rule was definite, well-established and regularly applied at the time the petitioner waived his right to review.  *See* Fabricatore, 281 Conn. at 478-79, n.12, 915 A.2d 878-79, n.12 (citing cases in which Connecticut Appellate Court held that defendant's unpreserved claim was unreviewable because review of claim had been waived at trial and did not meet third prong of *Golding*); State *v. Tyson*, 86 Conn. App. 607, 612-13 (2004) ("Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim."), *cert. denied*, 273 Conn. 927, 873 A.2d 1000 (2005).

Because the state court made an adequate and independent finding that the petitioner had procedurally defaulted on his claim by waiving it at trial, the court cannot

review the claim unless the petitioner can show "cause and prejudice" or "a fundamental miscarriage of justice."  *Id.* at 854 (internal citations omitted).

To establish cause to excuse procedural default, petitioner must identify "some external impediment preventing counsel from constructing or raising the claim."  *Murray v. Carrier*, 477 U.S. 478, 492 (1986).  Such factors include interference by state officials impeding compliance with state rules or a showing that the factual or legal basis for a claim was not reasonably available to defense counsel.  *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).  The petitioner has failed to allege any external cause to excuse the procedural default by his attorney.

Although ineffective assistance of counsel can constitute cause for failing to comply with a State's procedural rule,"[a]ttorney error short of ineffective assistance of counsel, [however], does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial."  *Murray*, 477 U.S. at 488, 492.  A claim of ineffective assistance must be raised in a state court proceeding as an independent claim before a petitioner may attempt to use it  to establish cause for a procedural default."  *See id.* at 489.   Thus, a petitioner must have properly presented and exhausted the ineffective assistance of counsel claim in state court before it will be considered as cause to excuse procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  The petitioner does not assert that his attorney was ineffective in failing to preserve his Sixth Amendment claim for review on appeal or that he has filed a state habeas petition raising such a claim.  Accordingly, the petitioner has not demonstrated that the procedural default was the result of ineffective assistance of counsel.  Where a petitioner has not shown cause, the court need not address the

prejudice prong of the procedural default standard.  *See* McCleskey, 499 U.S. at 501.

Nor has petitioner shown that failure to consider this claim would result in a fundamental miscarriage of justice, that is, "the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496.  To meet this exception, petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  To establish a credible claim of actual innocence, a petitioner must support his claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence-that was not presented at trial." *Id.* at 324.  Actual innocence requires a showing of factual innocence, not "legal innocence."  *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  The petitioner has not alleged that he is actually innocent.  Nor has he submitted any evidence to support such a claim.  Furthermore, the petitioner has not submitted any new evidence that he was innocent of the charges for which he was convicted.  Because the petitioner has not shown cause or a fundamental miscarriage of justice, the claim of error on the part of the trial judge set forth in ground one of the petition is procedurally defaulted, cannot be reviewed, and is denied.

**B.    Testimonial Statement of Jerrod Smith**

The petitioner claims that the trial judge erred in permitting the state to introduce into evidence the testimonial statement made by Jerrold Smith to a Manchester Police Department detective.  The petitioner contends that the judge should not have admitted the statement for substantive purposes because he did not have a meaningful

12

opportunity to cross-examine Smith regarding the contents of the statement.

The primary purpose of the Confrontation Clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to the scrutiny of cross-examination.  *See Douglas v. Alabama*, 380 U.S. 415, 418-19 (1965); *Crawford*, 541 U.S. at 50-59.  In *Crawford*, the Supreme Court held that the Sixth Amendment's Confrontation Clause bars admission against a criminal defendant of a previously made out of court "testimonial" statement by an unavailable witness who was not subject to cross-examination by the defendant.  *Id.* at 68.  As the Supreme Court has consistently held, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).  In *United States v. Owens*, 484 U.S. 554 (1988), the victim testified that he remembered identifying the defendant as his assailant during an interview following the assault but, on cross-examination, stated that he could not remember seeing his assailant.  *See id.* at 556.  The Supreme Court held that the fact that the witness could not testify concerning his identification of the defendant because of a memory lapse did not violate the Federal Rules of Evidence or the defendant's rights under the Confrontation Clause of the Sixth Amendment.  *See id.* at 564.

In analyzing this claim, the Connecticut Supreme Court applied the standard established in *Crawford* and *Owens*.  Because it applied the correct legal standard, the decision is not contrary to federal law.  *See 28 U.S.C. 2254(d)(1); Lurie v. Wittner*, 228 F.3d 113, 127 (2d Cir. 2000), *cert. denied*, 532 U.S. 943 (2001).

The Connecticut Supreme Court determined that although Smith denied having provided the police with a written statement, he testified that he had given the police an oral statement and that his signature and initials were on the written statement.  Smith further testified that he did recall divulging some of the information in the written statement, but denied having any memory of divulging other information in the statement.   Smith swore to testify truthfully when he took that stand at trial, defense counsel subjected him to extensive cross-examination and he answered all the questions posed to him by defense counsel.  Thus, the petitioner was afforded the opportunity to question Smith regarding his version of the events that occurred on the night of shooting and Smith's alleged statements set forth in the written statement attributed to Smith and the oral statement that Smith conceded he did give to the police. Smith responded to questions concerning the incident and the written statement.   The Connecticut Supreme Court concluded that there was no reason to find that "Smith was functionally unavailable for cross-examination merely because he claimed that he had not given the police a written statement."  Holness, 289 Conn. at 549, 958 A.2d at 762.

Because the petitioner was afforded a full and fair opportunity to effectively cross-examine Smith about his version of events, his oral statement made to the police and the written statement attributed to him by the police, the admission of Smith's written statement did not violate the petitioner's Sixth Amendment rights.  *See id.* at 549-50, 958 A.2d at 762.  The decision by the Connecticut Supreme Court is neither contrary to nor an unreasonable application of United States Supreme Court precedent. The petition for writ of habeas corpus is denied on this ground.

14

## V.     Conclusion

The Petition for Writ of Habeas Corpus [**Doc. No. 1**] is **DENIED**.  Because petitioner has not made a showing of the denial of a constitutional right, a certificate of appealability will not issue.

The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 18th day of September 2012, at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge